UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| SYNGENTA SEEDS, INC., a Delaware corporation, | Case No. 5:11-cv-4074 |
| Plaintiff, | |
| v. | **COMPLAINT** |
| BUNGE NORTH AMERICA, INC., a New York corporation, | **JURY TRIAL DEMANDED** |
| Defendant. | |

Plaintiff Syngenta Seeds, Inc. ("Syngenta"), for its Complaint against Defendant Bunge North America, Inc. ("Bunge" or "Defendant"), states and alleges as follows:

## THE PARTIES

1. Syngenta is a Delaware corporation with its principal place of business in Minnetonka, Minnesota. Syngenta is a leading agribusiness company committed to sustainable agriculture through research and technology. Syngenta is, among other things, in the commercial seed business. It develops, produces, and sells, through dealers and distributors or directly to growers, a wide range of agricultural products, including corn and soybean seed exhibiting useful traits that have been developed with the techniques of modern biotechnology. The seed products are then grown and harvested as raw materials for the production of biofuels or grain for livestock feed; or are milled and processed for food products.

2. Defendant Bunge is a New York corporation with its principal place of business in St. Louis, Missouri. Bunge has grain elevators and other grain-receiving facilities placed throughout the United States, including at least Alabama, Arkansas, California, Illinois, Indiana, Iowa (including the Northern District of Iowa), Kansas, Kentucky, Louisiana, Mississippi, Missouri, Nebraska, Ohio, and Tennessee.

## JURISDICTION AND VENUE

3. This action arises under the Lanham Act, 15 U.S.C. § 1125(a), and the United States Warehouse Act, 7 U.S.C. § 241 *et seq.* ("USWA"). This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1121. In addition, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are of diverse citizenship and the amount in controversy exceeds $75,000 exclusive of interest and costs. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Syngenta's state law claims because those claims are related to the claims in the action within the Court's original jurisdiction and form part of the same case or controversy.

4. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) in that Defendant is a corporation subject to personal jurisdiction in Iowa and a substantial part of the events giving rise to the claim occurred in Iowa.

## FACTS

5. Syngenta develops and produces, among other seeds, corn seed, which it sells to growers either directly or through a network of independent dealers and distributors. Syngenta enters into contracts with such dealers and distributors to sell

Syngenta seed, and ultimately, sells its seed to growers.

6. Like other crops, corn seed is susceptible to certain environmental conditions that may significantly decrease its yield. For instance, certain pests, such as corn borer, corn rootworm, and the multi-pest complex, a collection of insects that cost American corn growers more than $1.1 billion annually in lost yield and grain quality, can damage corn crops by feeding on the root hairs, roots, ears, and leaves of corn plants.

7. To minimize the effect of pests, Syngenta and other companies have developed technology traits that are introduced into corn seed using the techniques of modern biotechnology to convey improved resistance to various pests.

8. Syngenta has independently developed a technology trait known as MIR162 that is sold under the Agrisure® Viptera™ trademark. Agrisure® Viptera™ products are high-performance corn products available in elite hybrids, and when combined with other biotechnology-derived traits, provide revolutionary dual-mode of action insect control, as well as herbicide tolerance in corn.

9. Syngenta has obtained all required regulatory approvals for its Agrisure® Viptera™ products for use in the United States. The United States Department of Agriculture ("USDA") and the U.S. Environmental Protection Agency ("EPA") have both determined that Agrisure® Viptera™ products containing MIR162 are safe for cultivation and use, and not a risk to the environment. The Food and Drug Administration ("FDA") has approved the products as safe for human consumption.

10. As a result, seeds containing the MIR 162 trait can be transported, bought, sold and grown without restriction. In other words, seed containing the MIR 162 trait is

treated just like any other corn seed.

11. Syngenta has also obtained all required regulatory approvals for its Agrisure® Viptera™ products for export of grain to those countries recommended by the Biotechnology Industry Organization ("BIO") and the National Corn Growers Association ("NCGA") before commercialization, that is, Canada and Japan. Additionally, the technology has been approved for cultivation in Canada, Argentina and Brazil, and for import in Australia, Brazil, Mexico, New Zealand, the Philippines, Korea, and Taiwan.

12. Despite the fact that Syngenta has all required regulatory approvals for its Agrisure® Viptera™ products in the United States, and in the historically major export markets, Bunge has adopted a corporate policy and communication which it has disseminated publicly, including to its entire network of grain elevators and receiving stations throughout the U.S., has published on its website and has confirmed by physically posting a sign at several locations (the "Policy"), that reads:

> Please note that Bunge currently **is unable to accept** delivery of corn/soybeans produced from the following seed products for the 2011/2012 growing season:
>
> **Agrisure® Viptera™ - MIR162 (Syngenta)**
> **Plenish™ soybeans (DuPont/Pioneer)**
>
> These seed products have not received necessary international approval from major export destinations for the U.S.
>
> Bunge facilities are integrated into the export market, which is why the terms of Bunge's purchase contract states that Bunge will not accept grains and oil seeds containing transgenic events not approved for U.S. export markets.

Bunge will accept a listed product once the seeds receive approval from major export markets.

*See* Bunge Policy, attached hereto as Exhibit 1(emphasis in original).

13. Bunge's Policy states that it is unable to accept corn from the Agrisure® Viptera™ seed. This is false. Bunge has made a unilateral, unlawful decision not to accept Agrisure® Viptera corn, but it is certainly *able* to accept such corn.

14. Bunge's Policy states that Agrisure® Viptera™ has "not received necessary international approval from major export destinations for the U.S." This is false. Agrisure® Viptera™ has been approved in the major export destinations, as well as many other export destinations identified above in paragraph 11.

15. Agrisure® Viptera™ has not obtained approval in China. China, however, is not a major export destination for corn. Last year, according to the USDA, China's U.S. corn imports represented less than 3% of the total 2010-2011 U.S. corn exports.

16. Even if China were a "major export destination" for corn, the statement of the Bunge Policy that Viptera™-produced corn products "have not received necessary international approval from major export destinations for the U.S." is false, misleading and confusing to readers of the Policy.

17. Bunge's Policy is misleading as it states that "Bunge facilities are integrated into the export market" and thus, will not accept products "not approved for U.S. export markets." Bunge exports corn, but much of the corn it receives stays in the United States. Upon information and belief, therefore, this statement is not true as to all of the facilities that have posted the Policy on their location-specific websites or

5

physically posted the Policy as a sign at the grain elevator. Agrisure® Viptera™ products have approval in major U.S. export markets.

18. Bunge's actions and false and misleading statements additionally falsely imply that there are characteristics of Agrisure® Viptera™ Syngenta products that are undesirable to growers, including Syngenta customers and potential customers. Bunge's false and misleading statements cause confusion among farmers about the approvals of Agrisure® Viptera™ and actual permitted uses of Agrisure® Viptera™ produced grain.

19. Bunge's actions and false and misleading statements will hinder future sales of Agrisure® Viptera™ seed, and may induce current customers to breach existing contracts. Furthermore, Bunge's unlawful refusal to accept tendered corn could potentially induce claims against Syngenta.

20. Bunge's actions and false and misleading statements will adversely affect Syngenta's goodwill, its value in the Agrisure® Viptera™ brand and will also affect the reputation of Syngenta and Agrisure® Viptera™ products.

21. Syngenta representatives met with Bunge representatives on August 11, 2011. During this meeting, Syngenta requested that Bunge take down its Policy and work with individual elevators within Bunge's network and growers to accept delivery of Agrisure® Viptera™ products.

22. Bunge refused to take down or modify the Policy in any way.

23. Upon information and belief, all Bunge facilities have the capacity to take grain containing Viptera™.

24. In several instances, Bunge personnel at locations throughout the county

have admitted that their locations could work with farmers to accept grain containing Viptera™. Notwithstanding this fact, Bunge has adopted a corporate-wide Policy and publicly stated its unwillingness to accept Viptera™ grain anywhere. Nor will Bunge agree to publicly announce a willingness to work with farmers to accept Viptera™ grain, even where the local elevator has admitted the ability to accept Viptera™ grain.

25. Also on August 11, 2011, DTN/Progressive Farmer network published an article on its network titled "Bunge . . . won't accept Syngenta's Viptera Corn." This article posted a photograph of a sign containing Bunge's Policy and noted, already, the impact of Bunge's Policy on Syngenta's reputation with growers: "Farmers in this area of northeast Missouri are not happy with Syngenta, as many are scrambling to identify local places to go with their grain as harvest nears. . . ."

26. In that same article, Bunge stated that their facilities are prepared to test grain for the Viptera™ trait and will reject loads when it is detected. This is also false. Upon information and belief, Bunge facilities cannot realistically test all loads of corn for the Viptera™ trait at the anticipated speed of delivery, and Bunge personnel at locations throughout the county have admitted that their locations could work with farmers to accept grain containing the Viptera™ trait. In fact, on the same day the article was punished, a representative of Bunge at its headquarters, admitted to Syngenta that it does not plan to test inbound corn deliveries of grain. Bunge's public representations appear to be designed to induce confusion and undue concern among growers.

27. In addition to written versions of the Policy, radio stations have picked up Bunge's Policy and have broadcast that Bunge will not take any corn containing the

Viptera™ trait. For all of the reasons stated in paragraphs 13 through 20 above, Bunge's Policy as repeated in these radio broadcasts is also false and misleading.

28. On August 15, 2011, Ag Professional news published an article on its website regarding Bunge's rejection of grain containing the Viptera™ trait, which further confirmed the impact of Bunge's Policy on Syngenta's reputation with growers, noting that Bunge's rejection "caused Syngenta seed customers to lose confidence in the company. Most of the limited number of seed customers aware of the problem last week were definitely upset."

## COUNT I
## VIOLATION OF THE LANHAM ACT 15 U.S.C. § 1125 *et seq*

29. Syngenta restates and realleges paragraphs 1 through 28.

30. Bunge's conduct described above constituted false advertising and/or promotion within the meaning of 15 U.S.C. § 1125(a).

31. Bunge's conduct described above was undertaken in the course of Bunge's business in a manner affecting interstate commerce. By using its website and adopting and disseminating the Policy publicly, including as reprinted above through its entire network of grain elevators and other grain-receiving facilities throughout at least 14 states, Bunge undertook an organized campaign to make misrepresentations and false representations and descriptions of fact regarding Syngenta and its Agrisure® Viptera™ products.

32. Through its stated corporate Policy, website, and signs posted at elevators, and radio advertisements, Bunge is misrepresenting the regulatory and export approvals

Agrisure® Viptera™ products have in the major export markets for corn, misrepresenting its ability to take or handle Agrisure® Viptera™ products, and misrepresenting the destinations for grower-delivered corn containing the Agrisure® Viptera™ brand at the majority of Bunge's facilities.

33. Bunge's false and misleading representations were made willfully and intentionally.

34. Bunge's conduct described above constitutes a violation of 15 U.S.C. § 1125(a).

35. As a direct and proximate result of Bunge's actions, Syngenta has suffered and will continue to suffer, monetary loss and irreparable injury to its business, reputation, brand and goodwill. Syngenta is entitled to injunctive relief to prevent Bunge's continued false and misleading statements regarding Syngenta's Agrisure® Viptera™ products. Unless Bunge is enjoined from continuing its false and misleading Policy, Syngenta will suffer harm for which there is no adequate remedy at law. Syngenta is also entitled to damages, including its lost profits, and enhanced damages and attorneys fees under the Lanham Act, in amounts in excess of $75,000, to be proven at trial.

## COUNT II
## VIOLATION OF USWA § 7 U.S.C. § 241 *et seq*

36. Syngenta restates and realleges paragraphs 1 through 35.

37. Bunge is a warehouse operator, and the majority of its warehouses are licensed under the USWA. Bunge has licensed its warehouses in Alabama, Arkansas,

California, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Mississippi, Missouri, Nebraska, Ohio, and Tennessee under the USWA.

38. The Policy re-printed in Paragraph 12 above has been broadcast on the national DTN/Progressive Farmer news network, disseminated to all Bunge Facilities, posted on the website of Bunge facilities, is physically posted at several of Bunge's USWA licensed warehouses, and was broadcast on the radio in several states containing USWA licensed warehouses.

39. There is a private cause of action for violations of the USWA. 7 C.F.R. § 735.9(a).

40. Agrisure® Viptera™-produced corn is of the kind, type, and quality customarily stored or handled in the area of grain elevators such as Bunge's.

41. Agrisure® Viptera™-produced corn is, absent other facts, in suitable condition for warehousing.

42. The USWA requires that Bunge treat growers tendering corn "in a fair and reasonable manner." § 7 U.S.C. § 247. It is not fair and reasonable for Bunge to refuse to accept Agrisure® Viptera™-produced corn at all Bunge facilities. Bunge has refused such corn consistent with its Policy.

43. In addition to all other reasons, upon information and belief, Bunge has, as recently as last year, accepted corn grain at its facilities produced from seed corn containing traits not approved in China.

44. According to the USDA, corn exports to China totaled less than 3% of the U.S. corn exports last year, and are estimated to be only perhaps 4% of the total 2010-

2011 U.S. corn exports. As a percentage of production, corn exports to China totaled 0.5% in 2010 and are estimated to be only 0.6% for 2011. It is not reasonable to turn away 100% of the sound, approved Agrisure® Viptera™-produced corn in response to export market approval status in China accounting perhaps 0.6% of the corn market.

45. Unless Defendant is preliminarily and permanently enjoined from refusing to accept Agrisure® Viptera™-produced corn, Syngenta will suffer immediate and irreparable injury for which there is no adequate remedy at law, in the form of lost goodwill, lost market share, lost confidence from its customers and distribution network, and other injuries. Syngenta is also entitled to damages in an amount to be proven at trial, in excess of $75,000 exclusive of interest and costs.

## COUNT III
## VIOLATION OF THE COMMON LAW REQUIREMENTS TO ACCEPT GRAIN AS A PUBLIC UTILITY, OR ALTERNATIVELY, VIOLATIONS OF IOWA CODE § 203C.27 AND SIMILAR STATE CODIFICATIONS OF THE COMMON LAW DUTY

46. Syngenta restates and realleges paragraphs 1 through 45.

47. Common law imposes a requirement that public warehouses, as public utilities, may not refuse to receive goods which it is authorized to receive and store.

48. Iowa has codified this common law principle in Iowa Code § 203c.27, which states:

"[e]very warehouse operator conducting a warehouse licensed under this chapter shall receive for storage therein, so far as its authorized storage capacity permits, any product of the kind the operator is permitted by the operator's license to store, and which may be tendered to the operator in a suitable condition for warehousing, in the usual manner and in the ordinary and usual course of business, without making any discrimination between persons desiring to avail themselves of warehouse facilities."

49. Bunge's warehouses are public warehouses licensed and authorized to receive and store corn.

50. Bunge categorically refuses to receive Agrisure® Viptera™-produced corn, even though its warehouses have capacity to store it, and are accustomed to receiving corn.

51. Bunge categorically refuses to receive Agrisure® Viptera™-produced corn, even though the offered corn is dry and in suitable condition for warehousing and storage, and tendered in the usual course of business.

52. Therefore, Bunge has violated the common law requirement to accept grain as a public utility and Iowa Code § 203c.27, as well as similar laws of other states.

53. Unless Defendant is preliminarily and permanently enjoined from refusing to accept Agrisure® Viptera™-produced corn, Syngenta will suffer immediate and irreparable injury for which there is no adequate remedy at law, in the form of lost goodwill, lost market share, lost confidence from its customers and distribution network, and other injuries. Syngenta is also entitled to damages in an amount to be proven at trial, in excess of $75,000 exclusive of interest and costs.

### COUNT IV
### DECLARATORY JUDGMENT FOR FEDERAL AND STATE WAREHOUSING VIOLATIONS

54. Syngenta restates and realleges paragraphs 1 through 53.

55. The USWA requires that Bunge treat growers tendering corn "in a fair and reasonable manner." 7 U.S.C. § 247.

56. Common law, Iowa Code § 203c.27 and similar state-law codifications of

the common law require public warehouses, as public utilities, to receive goods which it is authorized to receive and store.

57. Bunge's stated Policy expresses an intent to violate the USWA and common law by refusing to receive Agrisure® Viptera™-produced corn.

58. Bunge's refusal to accept Agrisure® Viptera™-produced corn is not fair and reasonable.

59. An actual, present, and justiciable controversy has now arisen and exists between Bunge and Syngenta regarding the lawfulness of Bunge's Policy. The declaratory relief sought in this action will clarify and settle the legal relations between the parties and will afford relief from the uncertainty and controversy that presently exist with respect to these respective rights and duties.

60. Syngenta is entitled to a declaratory judgment, declaring that Bunge is in violation of USWA § 247, applicable state statutes, and the common law, and/or that its actions consistent with the Policy would be a violation of the USWA, applicable state statutes, and common law.

## COUNT V
## INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONSHIP

61. Syngenta restates and realleges paragraphs 1 through 60.

62. Syngenta has contracts with farmers for purchase and use of Agrisure® Viptera™ corn seed.

63. By disseminating and enforcing the Policy, Bunge intentionally and improperly interfered with Syngenta's contractual relationships.

64. Bunge has actual or constructive knowledge of contracts between Syngenta and farmers for purchase of Agrisure® Viptera™ corn seed.

65. Bunge's false statements are causing existing Syngenta customers to discontinue their contractual relationships with Syngenta with regard to Agrisure® Viptera™ corn seeds.

66. Bunge intentionally and improperly caused these interferences by disseminating and enforcing the false, misleading and unlawful Policy.

67. Bunge's Policy contains false statements, and its actions are therefore not justified or proper.

68. As a result of Bunge's Policy, Bunge's conduct has directly and proximately damaged Syngenta in an amount to be proven in trial.

## COUNT VI
## INTERFERENCE WITH PROSPECTIVE ADVANTAGE

69. Syngenta restates and realleges paragraphs 1 through 68.

70. Syngenta has a prospective contractual or business relationship with farmers for purchase of Agrisure® Viptera™ corn seed.

71. Bunge Policy is visible to everyone receiving a DTN notification, visiting Bunge's websites and tendering grain at Bunge's warehouses. The Policy falsely states that Agrisure® Viptera™-produced corn does not have necessary approval from major export destinations, and that Bunge is unable to accept Viptera™ corn.

72. Bunge has actual or constructive knowledge that farmers viewing its Policy are prospective customers of Syngenta for the purchase of Agrisure® Viptera™ corn

seed.

73. By posting the Policy, Bunge induced and/or will induce farmers not to enter into or continue their relationships with Syngenta.

74. The Policy disseminated by Bunge is improper, both as violations of federal and state law, common law, and because the Policy is demonstrably false, misleading and/or confusing to farmers.

75. Bunge intentionally and improperly caused these severed relations by posting the Policy.

76. As a result of Bunge's Policy, Bunge's conduct has directly and proximately damaged Syngenta in an amount to be proven in trial.

## COUNT VII
## BUSINESS DEFAMATION / LIBEL PER SE/SLANDER PER SE

77. Syngenta restates and realleges paragraphs 1 through 76.

78. Bunge's false and misleading statements are directed adversely to Syngenta, its trademarks, and its products containing MIR162. The statements were intended to and/or resulted in reputational harm, injury, damage, and loss to Syngenta.

79. Bunge's false and misleading statements and descriptions of fact therefore constitute improper business defamation. In addition, because these false and misleading statements are slanderous imputations affecting Syngenta's business/trade, they also constitute libel per se and slander per se.

80. Bunge's actions have caused, and will continue to cause, irreparable harm to Syngenta unless enjoined.

81. As a result of Bunge's business defamation, Syngenta has been directly and proximately injured in an amount to be determined at trial.

## COUNT VIII
## VIOLATION OF MINN. STAT. §325D.44, DECEPTIVE TRADE PRACTICES AND OTHER SELECT STATES' CODIFICATIONS OF THE UNIFORM DECEPTIVE TRADE PRACTICES ACT

82. Syngenta restates and realleges paragraphs 1 through 81.

83. Bunge's conduct described above was undertaken in the course of Bunge's business.

84. Bunge has made false representations about Agrisure® Viptera™ corn and approvals in major export markets. Bunge knows that its representations are deceptive.

85. Bunge's conduct described above constitutes a deceptive trade practice within the meaning of Minn. Stat. § 325D.44, and similar states' laws codifying the Uniform Deceptive Trade Practices Act, in that, without limitation, Bunge disparaged the products and business of Syngenta by false or misleading representations of fact.

86. As a direct and proximate result of Bunge's actions, Syngenta has suffered and will continue to suffer, monetary loss and irreparable injury to its business, reputation, brand and goodwill. Syngenta is entitled to injunctive relief to prevent Bunge's continued false and misleading statements regarding Syngenta's Agrisure® Viptera™ products. Unless Bunge is enjoined from continuing its false and misleading Policy, Syngenta will suffer harm for which there is no adequate remedy at law. Syngenta is also entitled to damages, including its lost profits, in amounts in excess of $75,000, to be proven at trial.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(a) of the Federal Rules of Civil Procedure, Syngenta demands a jury trial as to all issue triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff Syngenta prays that the Court enter judgment against Defendant Bunge:

(a) In favor of Syngenta and against Bunge on all of Syngenta's claims;

(b) Preliminarily and permanently enjoining and restraining Bunge, its officers, agents, subsidiaries, servants, partners, employees, attorneys and all others in active concert with them, from posting, publishing or disseminating the Policy, or acting consistently with the position expressed in the Policy;

(c) Awarding Syngenta damages, in an amount to be determined at trial, but in excess of $75,000, plus attorneys fees, costs, expenses, and interest incurred in this action; and

(d) Awarding Syngenta other relief as the Court may deem just and proper.

Dated: August 19, 2011

/s/ David A. Tank
David A. Tank (AT0007732)
Megan Flynn (AT0010000)
DORSEY & WHITNEY LLP
801 Grand Avenue, Suite 3900
Des Moines, Iowa 50309
Tel: (515) 283-1000
Fax: (515) 283-1060
Email: tank.dave@dorsey.com
flynn.megan@dorsey.com

Attorneys for Plaintiff Syngenta Seeds, Inc.