UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | | |
|---|---|---|
| SYNGENTA SEEDS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 5:11-cv-4074-MWB |
| BUNGE NORTH AMERICA, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**BUNGE NORTH AMERICA, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION
FOR JUDGMENT ON THE PLEADINGS AS TO COUNTS II, III, IV AND IX**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................1

ARGUMENT........................................................................................................................2

    1.    Standard for a Judgment on the Pleadings ............................................................2

    2.    Count II, for Violations of the USWA, Fails as Matter of Law Because the USWA Does Not Create a Private Right of Action for Violations of 7 U.S.C. § 247(a) ............................................................................................................3

        a.    The USWA does not create an *implied* private right of action ..................3

            i.    7 U.S.C. § 247(a) does not contain "rights creating" language ........................................................................................5

            ii.    The USWA already has an enforcement mechanism ....................7

        b.    Section 245(d) of the USWA does not create an *express* private right to sue for violations of 7 U.S.C. § 247(a)......................................................9

        c.    The Department of Agriculture regulations do not create a private right of action for an alleged violation of 7 U.S.C. § 247(a) ...............................14

    3.    Syngenta Lacks Standing to Sue for Violations of the USWA ............................15

    4.    Count III, for Violations of the Iowa Warehousing Laws, Fails as Matter of Law Because Syngenta Has No Right of Action Under Iowa Law..................17

    5.    Count IX, Alleging Breach of Contract Under a Third-Party Beneficiary Theory, Fails as Matter of Law Because Syngenta Is Not a Third-Party Beneficiary to Bunge's Licensing Agreement.....................................................18

CONCLUSION......................................................................................................................20

CERTIFICATE OF SERVICE ...................................................................................................21

## INTRODUCTION

Counts II and III of Syngenta's First Amended Complaint ("Complaint") attempt to assert violations of the United States Warehouse Act ("USWA") and Iowa warehousing laws, respectively. Count IV seeks a declaratory judgment that Bunge violated the USWA and Iowa warehousing laws. These counts fail as a matter of law because Syngenta has no cause of action for the purported warehousing law violations.

Specifically, as to Count II, the USWA does not allow a private right of action for purported violations of 7 U.S.C. § 247(a), which relates to treating those seeking to store agricultural products in a "fair and reasonable manner." Syngenta alleges Bunge violated this provision by prospectively refusing to accept Viptera[TM] corn, which Syngenta marketed and sold to farmers despite failing to first obtain regulatory approval in certain countries. Compl. at ¶¶ 11, 36-45. The USWA does not, however, provide an express private cause of action to enforce this provision and one cannot be implied from the statutory language. Moreover, Syngenta would not have the ability to pursue such a claim, even if one existed, because Syngenta is not in a class of persons the statute was designed to protect and does not have standing to pursue its claim. Syngenta has no cause of action as to Count III because all of Bunge's Iowa facilities are licensed under the USWA and, therefore, Bunge has no facilities that are subject to Iowa state warehousing law. As such, Bunge is entitled to judgment as a matter of law on these claims.

Bunge is also entitled to judgment as a matter of law on Count IX, in which Syngenta alleges that it is a third-party beneficiary of the Licensing Agreement Bunge has with the Farm Services Agency, United States Department of Agriculture ("FSA"). As this Court already held in relation to Syngenta's preliminary injunction motion, the plain terms of the Licensing Agreement belie this argument. Not only is Syngenta's allegation contradicted by the Licensing

Agreement, allowing such a claim would create an end-run around the USWA's enforcement provisions and render them meaningless. Syngenta is not an intended third party beneficiary of Bunge's Licensing Agreement with the FSA and therefore Count IX fails as a matter of law.

## ARGUMENT

### 1. Standard for a Judgment on the Pleadings

Bunge's motion for judgment on the pleadings and memorandum in support thereof are based on Bunge's understanding of this Court's September 26, 2011 Memorandum Opinion and Order Regarding Plaintiff's Motion for Preliminary Injunction. *Syngenta Seeds, Inc. v. Bunge North America, Inc.*, No. 5:11-cv-4074-MWB (N.D. Iowa Sept. 26, 2011). While Bunge recognizes that the Court's rulings therein are provisional, Bunge asserts that, because the Court's decision regarding Counts II-IV and IX was based primarily on conclusions of law and the interpretation of documents necessarily incorporated into the pleadings, the Court's prior analysis and conclusions remain highly instructive. Therefore, in its present motion and accompanying memorandum, Bunge primarily summarizes and refers to its prior legal arguments regarding Counts II-IV, and IX, and also references the Court's sound reasoning in its September 26, 2011 Memorandum and Order. Bunge also believes it would be entitled to summary judgment on the factual merits of the claims (consistent with the Court's provisional rulings); however, Bunge has not addressed those factual arguments in this brief, and has limited this brief to matters within the pleadings that can be ruled upon by the Court as a matter of law.

Bunge moves for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c), providing that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Judgment on the pleadings "should only be granted if the moving party has clearly established that no material issue of fact remains and the moving party is

entitled to judgment as a matter of law." *Elnashar v. U.S. Dept. of Justice*, 446 F.3d 792, 794 (8th Cir. 2006) (citing *Waldron v. Boeing Co.*, 388 F.3d 591, 593 (8th Cir.2004)). The court must "accept all facts pled by the nonmoving party as true and draw all reasonable inferences from the facts in favor of the nonmovant." *Waldron*, 388 F.3d at 593. Courts may consider "public records not contradictory to the complaint" without converting a motion for judgment on the pleadings into one for summary judgment, *Elnashar*, 446 F.3d at 796; FED. R. CIV. P. 12(d), as well as materials "necessarily embraced by the pleadings." *Noble Sys. Corp. v. Alorica Central, LLC*, 543 F.3d 978, 982 (8th Cir.2008) (quoting *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir.1999)). "Necessarily embraced" materials include exhibits attached to the pleadings. *U.S. v. $244,320 in U.S. Currency*, 295 F.Supp.2d 1050, 1056 (S.D. Iowa 2003).

## 2.    Count II, for Violations of the USWA, Fails as Matter of Law Because the USWA Does Not Create a Private Right of Action for Violations of 7 U.S.C. § 247(a)

As Syngenta acknowledges, there is no express provision within § 247 of the USWA that creates a private right of action for the claim it asserts. Compl. at ¶ 39. Syngenta alleges, instead, that a provision in the Act relating to bonding requirements (§ 245), and regulations supporting the USWA (7 C.F.R. § 735.9(a)), supply a private right of action for violations of the USWA. *See id*. There is no statutory support that either of these provisions provides a private right of action. The plain language of the USWA shows no Congressional intent to create a private right of action and regulations cannot create a cause of action where Congress did not.

### a.    The USWA does not create an *implied* private right of action

Where, like here, the statute does not include an express provision granting a private right to sue, a court may find that there is an implied right. The question of whether a statute creates a private cause of action is one of statutory construction. *Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 15 (1979). "Without [statutory intent], a cause of action does not

exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Horne v. Flores*, 129 S.Ct. 2579, 2598 n.6 (2009). "Separation of powers provides good reason for the now-settled view that an implied cause of action exists only if the underlying statute can be interpreted to disclose the intent to create one . . . . The decision to extend the cause of action is thus for the Congress, not for this Court." *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 150 (2008). *See also Furrer v. Brown*, 62 F.3d 1092, 1102 (8th Cir. 1995) ("The role of the federal courts, of course, is as interpreters of the words chosen by Congress, not as policy makers or enlargers of congressional intent.") (Bennett, District Judge, concurring).

Further, "private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). Courts must "interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Id.* "Statutory intent on this latter point is determinative." *Id.* "Without it, a cause of action does not exist, and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Id.* at 286-87.

In *Sandoval*, the Supreme Court identified the sources that are most relevant to determining if Congress intended to create a private right. First and foremost, the statutory text should be reviewed for "'rights-creating' language." *Id.* at 288. "Rights-creating language" is language "explicitly confer[ing] a right directly on a class of persons that include[s] the plaintiff in [a] case," *Cannon v. Univ. of Chi.,* 441 U.S. 677, 693 n. 13 (1979), or language identifying "the class for whose especial benefit the statute was enacted. . . ." *Texas & P. Ry. Co. v. Rigsby*, 241 U.S. 33, 39 (1916) (quoted in *Cannon,* 441 U.S. at 688 n. 9).

Second, courts must examine the statutory structure within which the provision in question is embedded. "If that statutory structure provides a discernible enforcement mechanism, *Sandoval* teaches that we ought not imply a private right of action because 'the express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others.'" *Love v. Delta Air Lines*, 310 F.3d 1347, 1353 (11th Cir. 2002) (quoting *Sandoval,* 532 U.S. at 290). "Third, if-and *only* if-statutory text and structure have not conclusively resolved whether a private right of action should be implied, [courts] turn to the legislative history and context within which a statute was passed." *Id.* (citing *Sandoval,* 532 U.S. at 288).

The following factors, from *Cort v. Ash*, 422 U.S. 66, 78 (1975), are also instructive of Congress's intent to create a private right of action: "(1) whether the plaintiff is a member of the class for whose benefit the statute was enacted; (2) whether Congress intended, explicitly or implicitly, to create such a remedy; (3) whether a private remedy is consistent with the underlying legislative scheme; and (4) whether a private right based on a federal statute would interfere with an area relegated to state law." *Syngenta Seeds, Inc.*, 2011 WL 4478510, at \*20.

Application of these standards and factors compels the conclusion that Congress did not intend that Syngenta have a private right to enforce the provisions of 7 U.S.C. § 247(a).

### i. 7 U.S.C. § 247(a) does not contain "rights creating" language

7 U.S.C. § 247(a) does not have "rights-creating" language. In *Gonzaga Univ. v. Doe*, the Supreme Court defined "rights-creating" language as text that is phrased in terms of the person benefitted. 536 U.S. 273, 283-284 (2002). In *Gonzaga*, the act at issue did not have rights-creating language because the relevant nondisclosure provision spoke "only in terms of institutional policy and practice, not individual instances of disclosure." *Id.* at 283 (prohibiting the funding of "any educational agency or institution which has a *policy or practice* of permitting

the release of education records") (emphasis added). Because the statute in *Gonzaga* had an "aggregate" focus and "was not concerned with 'whether the needs of any particular person have been satisfied,'" it could not give rise to individual rights. *Id.* (citation omitted).

*Gonzaga* contrasted the statute at issue there with the text of Titles VI and IX, for which the Court has recognized implied private rights. In those statutes, the text was "individually focused," stating that "[n]o person ... shall ... be subjected to discrimination". *Id.* at n. 3.[1] Unlike those statutes, 7 U.S.C. § 247(a) focuses on the conduct of the regulated warehouses and not on the "rights" of any class of persons, providing that "in general . . . a warehouse operator shall deal, in a fair and reasonable manner, with persons storing, or seeking to store, an agricultural product in the warehouse[.]" 7 U.S.C. § 247(a). This language—unlike in Titles VI and IX—is phrased in terms of the obligations of the warehouses and not on how that conduct affects a particular class of persons. As such, section 247(a) does not have rights-creating language. *See Sandoval,* 532 U.S. at 289 ("Statutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights on a particular class of persons.'") (citation omitted).

Furthermore, even if this Court determined that 7 U.S.C. § 247(a) created a private right, Syngenta would not be in any class to which Congress could have intended to grant rights under the Act (second *Cort* factor). Rights-creating language alone is not enough to create a private,

---

[1] "Title VI provides: '*No person* in the United States *shall* ... be subjected to discrimination under any program or activity receiving Federal financial assistance' on the basis of race, color, or national origin. 78 Stat. 252, 42 U.S.C. § 2000d (1994 ed.) (emphasis added). Title IX provides: '*No person* in the United States *shall,* on the basis of sex, ... be subjected to discrimination under any education program or activity receiving Federal financial assistance.' 86 Stat. 373, 20 U.S.C. § 1681(a) (emphasis added). Where a statute does not include this sort of explicit 'right- or duty-creating language,' we rarely impute to Congress an intent to create a private right of action. See *Cannon,* 441 U.S., at 690, n. 13, 99 S.Ct. 1946 (listing provisions); *Alexander v. Sandoval,* 532 U.S. 275, 288, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001) (existence or absence of rights-creating language is critical to the Court's inquiry)."

enforceable right. In addition, the plaintiff must be a member of the class of persons upon which the right is expressly conferred. *Cannon,* 441 U.S. at n. 13. Here, there is no language in the USWA supporting the notion that Congress intended to confer rights on a biotechnology company that sold its product to farmers who might deliver grain to the licensed warehouses. Moreover, "[t]he purposes of the USWA are to provide depositors with reliable protection, to produce a uniform regulatory system for storage of agricultural products, to provide warehouse receipts that are evidence of ownership and can be used as loan collateral, and to require warehouse owners to accept products for storage without discrimination." *Cozart v. Courter*, 64 F.3d 656 (table), 1995 WL 501979, at *2 (4th Cir. 1995). Indeed, Section 247(a) refers to "persons storing, or seeking to store, an agricultural product in the warehouse." Because there is no statutory language granting private rights to a class that could potentially include Syngenta, and one cannot be inferred based on the purpose of the Act, Syngenta has no private right of action. *Cannon,* 441 U.S. at n. 13 (observing that, for a statute to create such private rights, its text must be "phrased in terms of the persons benefited.").

### ii. The USWA already has an enforcement mechanism

Moreover, there is no evidence that Congress intended to provide a private *remedy* for violations of 7 U.S.C. § 247(a) (second *Cort* factor). Even if a statute displays Congressional intent to provide a private right, a plaintiff must still show that "the statute manifests an intent 'to create not just a private right but a private remedy.'" *Freeman v. Fahey*, 374 F.3d 663, 665 (8th Cir. 2004); *Syngenta Seeds, Inc.*, 2011 WL 4478510, at * 21 (same). Here, the statutory scheme establishes that enforcement of § 247 lies exclusively with the Secretary of Agriculture and, thus, the Act does not evince Congressional intent to provide a private remedy for violations of § 247.

"If that statutory structure provides a discernible enforcement mechanism, *Sandoval* teaches that we ought not imply a private right of action because '[t]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others.'" *Love*, 310 F.3d at 1353 (quoting *Sandoval,* 532 U.S. at 290). Because the USWA provides that its provisions will be enforced "exclusively" by the Secretary of Agriculture, it is evident that Congress intended to preclude private actions.

The USWA set up a voluntary licensing scheme for warehouse owners that choose to participate in the federal warehouse system. To that extent, the statute gives the Secretary of the Department of Agriculture expansive and "**exclusive** power, jurisdiction, and authority . . . with respect to: (1) each warehouse operator licensed under this chapter . . . ." 7 U.S.C. § 242(a) (emphasis added). To allow the Secretary to carry out its exclusive power, jurisdiction, and authority, the USWA provides the Secretary with the sole right to investigate, audit, and examine stored products, issue licenses to warehouse operators, and examine the books of warehouses. 7 U.S.C. § 242(l).

Further reinforcing the Secretary's exclusive powers, the USWA provides that the Secretary may enforce violations of the Act through a specified administrative procedure. *See* 7 U.S.C. § 252 ("After providing notice and an opportunity for a hearing in accordance with this section, the Secretary may suspend or revoke any license issued, or approval for an activity provided, under this chapter-- (1) for a material violation of, or failure to comply with, any provision of this chapter . . . ."). Moreover, civil penalties may only be assessed **by the Secretary**, after an administrative hearing, pursuant to 7 U.S.C. § 254. ("If a person fails to comply with any requirement of this chapter . . . the Secretary may assess, on the record after an opportunity for a hearing, a civil penalty.").

Because the USWA provides that statutory violations by regulated warehouses are to be enforced exclusively by the Secretary, Congressional intent to preclude private actions seems clear, and allowing third parties to sue for purported violations of 7 U.S.C. § 247 would be inconsistent with the legislative scheme (the third *Cort* factor). *See Sandoval*, 532 U.S. at 290 ("Whatever these elaborate restrictions on agency enforcement may imply for the private enforcement of rights created . . . they tend to contradict a congressional intent to create privately enforceable rights through § 602 itself.").

In contrast to the statute's plain intent that the Secretary would carry out the USWA's provisions and to generally enforce those provisions against warehouses, section 245 provides an express right to third-party actions for breaches of bonds. 7 U.S.C. § 245. That Congress allowed for a very specific private action in section 245 relating to breach of the bond obligation is clear evidence that it did not intend to provide a private action to enforce the other provisions of the USWA. *See Zeigler v. Fisher-Price, Inc.*, No. C01-289-PAZ, 2003 WL 1889021, *5 (N.D. Iowa Mar. 13, 2003) (holding that where the statute provided a private cause of action for rule violations, but not for statutory violations, the court could not imply a cause of action for the latter); *Leach v. Mediacom*, 240 F.Supp.2d 994, 999 (S.D. Iowa 2003) ("'Obviously ... when Congress wished to provide a private damage remedy, it knew how to do so and did so expressly.'") (quoting *Touche Ross & Co. v. Redington,* 442 U.S. 560, 572 (1979)); *MM & S Fin., Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 364 F.3d 908, 911 (8th Cir. 2004) (where Congress created a private right of action for some provisions of an Act, the failure to do so in another section suggests Congress did not intend a private right for the latter section).

  b. <u>Section 245(d) of the USWA does not create an *express* private right to sue for violations of 7 U.S.C. § 247(a)</u>

Syngenta alleges that 7 U.S.C. § 245(d) provides express authorization for a private right of action for a violation of 7 U.S.C. § 247. As this Court previously recognized, Syngenta's position—while creative—is wrong. In essence, Syngenta attempts to bootstrap a claim for pure license violations onto the statutory provision providing for a right of action on bonds made pursuant to the terms of the USWA. Syngenta's argument can be rejected by the plain language of § 245(d) and by the language of the bond itself.

Section 245(d), upon which Syngenta relies, provides that third parties "injured by the breach of any obligation arising under this chapter for which a bond or other financial assurance has been obtained as required by this section may sue *with respect to the bond* or other financial assurance in a district court of the United States to recover the damages that the person sustained as a result of the breach." (emphasis added). This section allows third parties—such as depositors—to whom Bunge owes an obligation under a contract and to whom the bond secures an obligation, to sue with respect to the bond. It is not a blanket authorization for any private suit by any third party for violations of the USWA.

The question for the Court is whether Congress intended to create a private right of action for violation of § 247(a), **not** whether suits with respect to the bond can be brought by third parties to the bond. As discussed above, the USWA sets up a voluntary licensing scheme for warehouse owners that choose to participate in the federal warehouse system. To that extent, the statute gives the Secretary of the Department of Agriculture expansive and "**exclusive** power, jurisdiction, and authority" with respect to licensed warehouses, 7 U.S.C. § 242(a), and the sole right to conduct numerous activities in furtherance of its power and authority, including enforcement. 7 U.S.C. §§ 252, 254.

The USWA recognizes one exception to the Secretary's exclusive enforcement: third parties may sue **with respect to a bond** for breaches of obligations for which a bond or other financial assurance has been obtained. § 245(d). As a condition of receiving a license from the Secretary of Agriculture, Bunge was required to execute a bond "to secure [its] performance of the activities so licensed or approved." 7 U.S.C. § 245(a). Bunge secured a bond that runs in favor of the United States. *See* Ex. 1, Warehouseman's Bond, at p. 1[2] (Bunge as principal is "held and firmly bound unto the United States of America"). The Bond *expressly* secures only two obligations, as referenced in § 245(d): (1) in favor of the United States the Bond secures "the faithful performance of the obligations as a warehouseman under the terms of the Act and the regulations prescribed thereunder"; and (2) "such additional obligations as a warehouseman as may be assumed by the warehouseman under contracts with the respective depositors[.]"[3] *Id.* at p. 2. Consistent with the legislative scheme, the first kind of obligation is secured by a bond running to the United States and is one under the terms of the Act and regulations that may be enforced by the Secretary pursuant to §§ 242 and 254; the second kind of obligation is a contractual obligation that may be enforced by a depositor.[4]

---

[2] Because Syngenta claims it has a private right of action to sue "with respect to [Bunge's] bond," Exhibit 1, Bunge's Warehouseman's Bond, is necessarily embraced by the pleadings and this Court may consider the Bond without converting this motion into one for summary judgment. *See Noble Sys. Corp. v. Alorica Central, LLC*, 543 F.3d 978, 982 (8th Cir.2008) (quoting *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir.1999)); *see, e.g., CCA Global Partners, Inc. v. Yates Carpet, Inc.*, 2006 WL 2883376, at n.9 (E.D. Mo. Oct. 5, 2009) (stock certificate is necessarily embraced by the pleadings because it is an "integral part" of the claim).

[3] A depositor is defined as a "[p]erson depositing grain in a USWA warehouse for storage and who maintains title to the grain." *See* Licensing Agreement, Ex. 2, at p. 2.

[4] This is consistent with the USWA's acknowledgment that a "warehouse operator shall be severally liable **to each depositor or holder** for the care and redelivery of the share of the depositor and holder of the commingled agricultural product to the same extent and under the same circumstances as if the agricultural products had been stored separately." 7 U.S.C. § 248(b). Thus, depositors to whom an obligation is secured under the bond may sue under the bond and hold the warehouse severally liable.

Syngenta's allegation that § 245(d) recognizing a party's right to sue on the bond creates a private cause of action under § 247(a) would defeat the USWA's requirement that its provisions will be enforced "exclusively" by the Secretary of Agriculture.[5] If any person could sue under the bond for Bunge's obligations to the United States, it would be an end run around the enforcement provisions allowing the Secretary to suspend a warehouse license or impose additional penalties, and would allow *any* person to sue for *any* USWA violation. §§ 252, 254. If § 245(d) were a blanket authorization for private rights of action to enforce the USWA or indicated Congressional intent to create a private right of recovery for every violation of the statute, why would Congress limit § 245(d)'s applicability to suits "with respect to the bond"? There is simply no indication that by recognizing a third party's right to sue on a bond that Congress intended to create a private right to enforce § 247(a).

Even if § 245(d) indicated Congressional intent to authorize a private cause of action for a violation of § 247(a), Syngenta still is not a member of any class for whose benefit the "action on the bond" provision was enacted. Also, the remedy contemplated by § 245(d) does not include equitable relief, but to damages against the bond. Therefore, reading § 245(d) to

---

Accordingly, the cases where a third party brings claims under the USWA involve mishandling or misappropriation of grains deposited in a warehouse and alleged liability to depositors or holders. *See, e.g., Allenberg Cotton Co. v. Staple Cotton Coop. Ass'n*, 2009 WL 1619950 (D. Miss. June 9, 2009) (plaintiff was a holder who received cotton from warehouse that had been contaminated during the ginning process); *Staple Cotton Coop. Ass'n v. D.G. & G, Inc.*, 503 F. Supp. 2d 1217 (E.D. Mo. 2007) (plaintiffs were holders who brought an action against the warehouse claiming warehouse mishandled cotton deposited in warehouse causing excessive moisture); *Hohenberg Bros. Co. v. Anderson Logistics Serv. Corp.*, 6 F. Supp. 2d. 1377 (S.D. Ga. 1998) (plaintiffs were designated holders who brought an action against warehouses regarding the delivery of cotton); *Dixey v. Fed. Compress & Warehouse Co.*, 140 F.2d 820 (8th Cir. 1944) (plaintiffs were holders of receipts who brought an action against a warehouse concerning cotton destroyed by fire); *Dixey v. Fed. Compress & Warehouse Co.*, 132 F.2d 275 (8th Cir. 1942) (same).

[5] The bond runs in favor of the United States in order to provide a source of funds for the penalties that the Secretary could impose under the USWA should the warehouse be unable to pay a penalty.

authorize Syngenta's USWA claim is inconsistent with the legislative scheme (the fourth *Cort* factor). *See Syngenta Seeds, Inc.*, 2011 WL 4478510, at *20.

The Seventh Circuit concurs with the conclusion that the USWA does not provide a private right for violations of the Act, independent of violations relating to bonds.[6] In *Pacific Trading Co. v. Wilson & Co.*, the plaintiffs sued the defendants for violations of the United States Warehouse Act, among other laws. 547 F.2d at 368 (7th Cir. 1976). Specifically, the plaintiffs alleged that defendants' sale of ham to it breached a contract and violated the Act. *Id.* at 369. The District Court granted the defendant's motion pursuant to Rule 12 (b), stating:

> Title 7, Sec. 241 *et seq.* of the United States Code is a regulatory statute which provides for the licensing of those public warehouses engaged in the storage of agricultural products. To enforce the provisions of the statute the Secretary of Agriculture is authorized to bring a penal action against the alleged violator. 7 U.S.C. Sec. 270.

*Id.* at 370. The District Court further noted that the USWA is "regulatory in character and Congress has vested the power to enforce this regulatory scheme in the government, not private individuals. . . . [I]n the United States Warehouse Act it is the Secretary of Agriculture who is to enforce the provisions of the Act. 7 U.S.C. Sec. 241." *Id.* The Seventh Circuit affirmed concluding that the USWA does not "expressly or inferentially permit the prosecution of a private action for a monetary recovery thereunder or enforcement thereof by fine." *Id.* at 368.

Although *Pac. Trading Co.* was decided under a previous version of the USWA, the amendment did not affect the legal import of this section and, thus, *Pac. Trading Co.* is still strong and compelling precedent. *See* S. REP. NO. 106-472, at 23 (2000). As it was in 1976

---

[6] The only case finding a private right of action under the USWA, relied solely on 7 C.F.R. § 735.9(a) to reach its conclusion, offering no analysis of *Cort, Sandoval*, or any other case law on private rights of action. *Allenberg Cotton Co. v. Staple Cotton Cooperative Ass'n*, 2009 WL 1619950 (N.D. Miss. June 9, 2009). *Allenberg* is, thus, unpersuasive at best.

when *Pac. Trading Co.* was decided, the USWA remains first and foremost a regulatory scheme to be enforced and carried out by the Department of Agriculture. It is not now—and has never been—a vehicle for private enforcement of licensing requirements, as Syngenta seeks to make it.

    c. <u>The Department of Agriculture regulations do not create a private right of action for an alleged violation of 7 U.S.C. § 247(a)</u>

Syngenta alleges that the Department of Agriculture regulations provide for a private right of action for violations of the statute." Compl. at ¶ 39. Although the 2002 regulations recognize that there may be some kind of private action for violations of the USWA, *see* 7 C.F.R. § 735.9(a) ("A person may initiate legal action in any court of competent jurisdiction concerning a claim for noncompliance or an unresolved dispute with respect to activities authorized under the Act."), the regulatory history clearly illustrates that this regulation was adopted to identify *where* a party could initiate an action, not to identify *who is authorized* to bring one. When the regulations were adopted in 2002, their purpose was to expand the forums available to parties who were already statutorily authorized to bring a claim under the USWA, for example, parties bringing actions under section 245 relating to breach on the bond obligation.[7] Indeed, rather than create private right of action, the regulations allow parties to

---

[7] In promulgating 7 C.F.R. § 735.9(a) the Farm Service Agency, Department of Agriculture (FSA) issued proposed rules, with several modernizing provisions, one of which allowed for arbitration. *See* Implementation of the United States Warehouse Act; Proposed Rule, 66 Fed. Reg. 46310-46343, at 46310-46311 (proposed Sept. 4, 2011). To implement the arbitration rule, the USDA proposed 7 C.F.R. § 735.9, which provided that claims brought under the USWA may be resolved through arbitration. The FSA received numerous objections to the proposed rule. *See* Implementation of the United States Warehouse Act; Final Rule, 67 Fed. Reg. 50778-50790 (Aug. 5, 2002). With regards to § 735.9, "[a] number of respondents objected to binding arbitration, which they interpreted as a requirement in the proposed rule. In response, FSA clarified the language to make it clear that arbitration is an acceptable but not a mandatory method of dispute resolution . . . ." 67 Fed. Reg. at 50780. As a result, the FSA's Final Rule modified the proposed regulation to add the language in 7 C.F.R. § 735.9(a) that Syngenta invokes. 67 Fed. Reg. at 50785. Simply stated, the regulation's history does not establish that the FSA intended to create a new right of action, but was simply addressing the means by which existing rights could be adjudicated.

resolve their disputes in arbitration. *See Syngenta Seeds, Inc.*, 2011 WL 4478510, at * 22 (7 C.F.R. 735.9(a) "plainly relates to the provision of the USWA that *expressly* provides for a private right of action.").

Moreover, Syngenta's allegation must be rejected because Congress did not create an express or implied right of action for alleged violations of 7 U.S.C. § 247. Congressional intent is "determinative" of whether a statute creates a private right. *Sandoval*, 532 U.S. at 286-87. "Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not." *Id.* at 291. "[I]t is most certainly incorrect to say that language in a regulation can conjure up a private cause of action that has not been authorized by Congress. Agencies may play the sorcerer's apprentice but not the sorcerer himself." *Id. See also Save Our Valley v. Sound Transit*, 335 F.3d 932, 937 (9th Cir. 2003). In short, the Department of Agriculture—an executive agency not vested with lawmaking power—has no authority to create a private right and, therefore, any regulation purporting to create one is irrelevant.

The Eighth Circuit squarely rejected Syngenta's argument in *Freeman v. Fahey*, 374 F.3d 663, 665 (8th Cir. 2004). In *Freeman*, the Eighth Circuit affirmed the dismissal of a claim for alleged violations of the Housing and Community Development Act, stating that "[a]lthough the implementing regulations mention a right to file a private civil action . . . the regulations could not create a private right of action because regulations 'may not create a right that Congress has not.'" 374 F.3d at 665, n.2 (citation omitted). Congress did not create a private right of action for violations of 7 U.S.C. § 247(a), and neither does 7 C.F.R. § 735.9(a).

3.  **Syngenta Lacks Standing to Sue for Violations of the USWA**

This Court should dismiss Counts II and IV on the independent basis that Syngenta does not have standing to pursue violations of the USWA. Standing "involves both constitutional limitations on federal court jurisdiction and prudential limitations on its exercise." *Friends of Boundary Waters Wilderness v. Dombeck,* 164 F.3d 1115, 1125 (8th Cir. 1999). "For purposes of standing, a plaintiff's injury must consist of an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Shain v. Veneman*, 376 F.3d 815, 818 (8th Cir. 2004) ("[P]laintiffs failed to allege even an imminent injury because the occurrence of a 100-year flood is by definition speculative and unpredictable.").

One test of prudential standing is "whether the interest sought to be protected by the complainant is within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Davis v. U.S. Bancorp*, 383 F.3d 761, 767 (8th Cir. 2004). The Supreme Court has also defined the test for prudential standing as "whether the . . . statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Warth v. Seldin*, 422 U.S. 490, 500 (1975). In enacting the USWA, Congress intended to confer "licensees certain privileges and [to] 'secure[] to the national government . . a measure of control over those engaged in the business of storing agricultural products.'" *Fed. Compress & Warehouse Co. v. McLean*, 291 U.S. 17, 22-23 (1934). Moreover, the text of § 247 refers to "*a party seeking to store agricultural products in the warehouse*, not upon a party who provided the seeds from which the person seeking to store the agricultural product grew that agricultural product." *Syngenta Seeds, Inc*, 2011 WL 4478510, at *25. *See* 7 U.S.C. § 247(a) ("[A] warehouse operator shall deal, in a fair and reasonable manner, *with persons storing, or seeking to store*, an agricultural product[.]"

(emphasis added)).  Here, there can be no credible argument that companies selling seed to farmers delivering to regulated warehouses are within the "zone of interest" Congress sought to protect and/or grant rights to by enacting the USWA.  Syngenta lacks standing because §247(a) was not enacted to protect its interests as a seed manufacturer.

4.    **Count III, for Violations of the Iowa Warehousing Laws, Fails as Matter of Law Because Syngenta Has No Right of Action Under Iowa Law**

Count III of the Complaint fails as a matter of law because Bunge's fair treatment of depositors is governed solely by Federal law, which preempts state law in this area.  In Count III, Syngenta asserts that Bunge violated Iowa common law and Iowa Code § 203C.27, both allegedly relating to whether Bunge can refuse to accept tendered agricultural goods at its grain elevators.  *See* Compl. at ¶¶ 46-53.  Syngenta's claim in Count III fails as a matter of law because all of Bunge's licensed grain handling facilities, including any located in Iowa, are licensed under the United States Warehouse Act.  *See* Ex. 2, License Agreement, noting that the license applies to all licensed locations in the United States.[8]  As this Court and Syngenta has recognized, 7 U.S.C. § 247 did not leave any "aspect[] of fair treatment in storage of agricultural products subject to state regulation."  *Syngenta Seeds, Inc.*, 2011 WL 4478510, at *26 (citing *Heart of Am. Grain Inspection Serv., Inc., v. Mo. Dept. of Ag.*, 123 F.3d 1098, 1104 (8th Cir. 1997).  Syngenta's claim in Count III is, therefore, preempted.  *See also Cozart*, 1995 WL 501979, at *2.  Bunge is entitled to judgment as a matter of law as to Count III for this reason.

---

[8] Because Syngenta claims in Count IX that it is a third-party beneficiary to Bunge's Licensing Agreement, Exhibit 2, Bunge's Licensing Agreement, is necessarily embraced by the pleadings and this Court may consider the document without converting this motion into one for summary judgment.  *See Noble Sys. Corp. v. Alorica Central, LLC*, 543 F.3d 978, 982 (8th Cir. 2008) (quoting *Porous Media Corp. v. Pall Corp*., 186 F.3d 1077, 1079 (8th Cir. 1999)); *Weitz Co., LLC v. Lexington Ins. Co.*, No. 4:10-cv-254-JAJ, 2011 WL 3706497, at n.7 (S.D. Iowa May 25, 2011) (contract referenced in the complaint is necessarily embraced by the pleadings).

**5.** **Count IX, Alleging Breach of Contract Under a Third-Party Beneficiary Theory, Fails as Matter of Law Because Syngenta Is Not a Third-Party Beneficiary to Bunge's Licensing Agreement**

Syngenta is not entitled to relief on Count IX—"Breach of Contract Third Party Beneficiary"—because Syngenta is not an intended third-party beneficiary of the Licensing Agreement. As this Court found in its September 26 Memorandum and Order, under Iowa law, "[t]he primary question in a third-party beneficiary case is whether the contract manifests an intent to benefit a third party." *Syngenta Seeds, Inc.*, 2011 WL 4478510, at *27 (quotations and citations omitted). *See also* RESTATEMENT (SECOND) OF CONTRACTS § 302. "The intent need not be to benefit a third-party directly, however." *Syngenta Seeds, Inc.*, 2011 WL 4478510, at *27 (citing *RPC Liquidation v. Iowa Dep't of Transp.*, 717 N.W.2d 317, 320 (Iowa 2006)). "Intent is determined by looking at the language of the contract and the circumstances surrounding it." *Id.*[9]

Syngenta asserts that it—as a seed manufacturer—is a third-party beneficiary of the Licensing Agreement. Syngenta, however, does not identify any provision that clearly expresses that the Licensing agreement was intended for Syngenta's benefit. Instead Syngenta identifies two provisions that supposedly indicate that Syngenta is the intended beneficiary of the Licensing Agreement: §§ E-5(A) and M(1).

Neither section indicates that the intent of the Licensing Agreement was to protect Syngenta or seed manufacturers. Section E-5(A) states that "The Warehouse Operator agrees to deal in a fair and reasonable manner with **persons storing or seeking to store grain**" if certain

---

[9] Bunge does not agree that Iowa substantive law would apply to this action; however, the principles of law on this issue are identical as between Iowa and Missouri. *Johnson Farm Equip. Co. v. Cook*, 230 F.2d 119 (8th Cir. 1956) ("[F]or one to be able to avail himself of a promise in an agreement to which he is not a party, he must, at least, show that it was intended for his direct benefit, in either all or part of its contemplated performance.").

conditions are meant.  *See* Ex. 2, at p. 12 (emphasis added).  But Syngenta is neither a person storing or seeking to store grain in Bunge's warehouses.  Nor is Syngenta a depositor or lawful owner, as defined in the License Agreement.  Section M(1) merely states that a person may initiate legal action for noncompliance or an unresolved dispute, and does not identify Syngenta specifically or seed manufacturers in general as the persons for whose benefit the License Agreement was executed.

In its September 26 Memorandum and Order, the Court noted the similarities between Syngenta's third-party beneficiary claim and that of the respondent in the recent United States Supreme Court case *Astra USA, Inc. v. Santa Clara County, Cal.,* —— U.S. ——, ——, 131 S.Ct. 1342, 1347 (2011).  *See Syngenta Seeds, Inc.,* 2011 WL 4478510, at *20.  In *Astra*, the respondent alleged that, "notwithstanding its inability to assert a statutory right of action," it could maintain an action as a third-party beneficiary to enforce the statutory obligations as expressed in agreements executed by the regulated entity.  *Astra USA, Inc.,* 131 S.Ct. at 1347. Like the respondent in *Astra*, Syngenta also asserts that, in the absence of express authority to sue for a violation of 7 U.S.C. § 247, it should be allowed to enforce the terms of that section, as outlined in the Licensing Agreement.  Compl. at ¶ 91.

As in *Astra*, the Court should reject Syngenta's argument.  In *Astra*, like the Licensing Agreement here, the contracts at issue "simply incorporate[d] statutory obligations and recorded the manufacturers' agreement to abide by them" and "serve[d] as a means by which the [regulated entities could] opt into the statutory scheme." *Astra USA, Inc.,* 131 S.Ct. at 1348.  In that case, "[a] third party suit to enforce [the agreement], therefore, [was] in essence a suit to enforce the statute itself."  *Id.*  Syngenta's allegations in Count IX seek to enforce § 247's "fair

and equitable treatment" provision and, as in *Astra*, is in essence a suit to enforce the statute. Compl. at ¶ 91.

*Astra* instructs that, "[t]he absence of a private right to enforce the statutory ... obligations would be rendered meaningless if [third-party] entities could overcome that obstacle by suing to enforce the contract's ... obligations instead." *Syngenta Seeds, Inc.*, 2011 WL 4478510, at *20 (quoting *Astra USA, Inc.*, 131 S.Ct. at 1348). "In such circumstances, a third-party beneficiary action would be inconsistent with the legislative scheme." *Id.* Because Syngenta is not a third-party beneficiary to the Licensing Agreement, Count IX fails as a matter of law.

## CONCLUSION

There are no material facts in dispute, and the pleadings together with the documents necessarily embraced by the pleadings establish that Bunge is entitled to judgment as a matter of law on Counts II, III, IV, and IX of the First Amended Complaint. Bunge respectfully requests dismissal of those Counts with prejudice.

Dated: October 14, 2011        Respectfully submitted,

**HEIDMAN LAW FIRM**

John C. Gray #AT0002938
1128 Historic Fourth Street
Sioux City, IA 51102
Telephone: (712) 255-8838
Facsimile: (712) 258-6714
John.Gray@heidmanlaw.com

**THOMPSON COBURN LLP**

John R. Musgrave, *pro hac vice*
Christopher M. Hohn, *pro hac vice*
Matthew A. Braunel, *pro hac vice*
David B. Jinkins, *pro hac vice*
One US Bank Plaza
St. Louis, Missouri 63101-1693
Telephone: (314) 552-6000

Facsimile: (314) 552-7000
jmusgrave@thompsoncoburn.com
chohn@thompsoncoburn.com
mbraunel@thompsoncoburn.com
djinkins@thompsoncoburn.com

By: /s/ Christopher M. Hohn

**Attorneys for Bunge North America, Inc.**

## CERTIFICATE OF SERVICE

I hereby certify that on October 14, 2011, the foregoing was sent via the Court's ecf filing system to the following counsel of record:

David A. Tank
Megan Flynn
DORSEY & WHITNEY LLP
801 Grand Ave, Suite 3900
Des Moines, IA 50309
(515) 283-1000 Tel.
(515) 283-1060

Daniel J. Brown
DORSEY & WHITNEY LLP
50 S. Sixth St., Suite 1500
Minneapolis, MN 55402
(612) 340-2600 Tel.

**ATTORNEYS FOR PLAINTIFFS**

/s/ Christopher M. Hohn