# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| SYNGENTA SEEDS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> BUNGE NORTH AMERICA, INC., <br><br> Defendant. | No. C 11-4074-MWB <br><br> **MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION TO SUPPLEMENT SUMMARY JUDGMENT RECORD** |

_____

## TABLE OF CONTENTS

*I.* *INTRODUCTION*............................................................................... *2*

*II.* *LEGAL ANALYSIS* ........................................................................... *3*
    *A.* *The Motion For Judgment On The Pleadings* ................................ *3*
        *1.* *Applicable standards*......................................................... *4*
        *2.* *Application of the standards* ............................................... *5*
            *a.* *The USWA claim*................................................. *5*
            *b.* *The Iowa warehousing claims* ................................ *5*
            *c.* *The declaratory judgment claim*.............................. *7*
            *d.* *The third-party beneficiary contract claim* ................... *7*
        *3.* *Summary*....................................................................... *7*
    *B.* *The Motion For Summary Judgment And The Motion To Supplement The Summary Judgment Record* ................................ *8*
        *1.* *Applicable standards*......................................................... *8*
        *2.* *Application of the standards* ............................................... *9*
            *a.* *The "commercial competition" requirement*................... *9*
            *b.* *The "commercial speech" requirement* ..................... *13*
        *3.* *Summary*..................................................................... *19*

*III.* *CONCLUSION* ............................................................................... *19*

## *I.     INTRODUCTION*

This is an action by plaintiff Syngenta Seeds, Inc., the producer of seed for corn with the Viptera™ genetic trait,[1] against defendant Bunge North America, the operator of grain and milling facilities and grain warehouses (or elevators) in the central United States, including two facilities in Iowa. Syngenta asserts several claims arising from Bunge's refusal to accept Viptera corn from growers at its facilities, on the ground that Viptera corn has not received approval from "major" export destinations, and from Bunge's posting of signs stating its policy of refusing Viptera corn. I previously rejected Syngenta's request for a preliminary injunction enjoining Bunge from refusing to accept transgenic corn grown from Syngenta's seed. *See* Memorandum Opinion And Order Regarding Plaintiff's Motion For Preliminary Injunction (docket no. 42), *published at Syngenta Seeds, Inc. v. Bunge North Am., Inc.*, 820 F. Supp. 2d 953 (N.D. Iowa 2011).

This case is before me on three motions. The first is Bunge's October 14, 2011, Motion For Judgment On The Pleadings (docket no. 48), in which Bunge seeks judgment on the pleadings on Syngenta's claims in **Count II (**violation of the United States Warehouse Act (USWA), 7 U.S.C. § 241 *et seq.*, and 7 C.F.R. § 735.9(a)), **Count III (**violation of common-law requirements to accept grain as a public utility or, alternatively, violation of IOWA CODE § 203C.27), **Count IV** (declaratory judgment of violations of federal and state warehousing laws), and **Count IX** (breach of contract as a third-party beneficiary of defendant Bunge's Licensing Agreement for Grain and Rice

---

[1] Syngenta has developed a genetic trait called MIR162 (or VIP 3A), sold under the Agrisure® Viptera™ trademark, which controls insects and reduces the development of fungus and mycotoxins in stored corn.

Warehouse Operators with the USDA Farm Service Agency (FSA)). The second motion is Bunge's November 21, 2011, Motion For Summary Judgment (docket no. 56), in which Bunge seeks summary judgment on Syngenta's claim in **Count I** (false advertising and/or promotion in violation of the Lanham Act, 15 U.S.C. § 1125(a)).[2] The last motion is Syngenta's September 25, 2012, Motion For Leave To Supplement Summary Judgment Record (docket no. 98), which seeks to supplement the record after the close of targeted discovery and supplemental briefing pursuant to Local Rule 56.h. and Rule 56(d) of the Federal Rules of Civil Procedure. My crowded schedule has not permitted timely oral arguments on these motions, and I find that the motions are thoroughly briefed, so that they may be deemed fully submitted on the written submissions.

## II. LEGAL ANALYSIS

### A. The Motion For Judgment On The Pleadings

In its first dispositive motion, Bunge asserts that it is entitled to judgment on the pleadings on the four claims at issue as a matter of law for essentially the reasons that I concluded that Syngenta had no likelihood of success on the merits on those claims when I rejected Syngenta's request for a preliminary injunction. Indeed, most of Syngenta's Resistance (docket no. 50) is a reassertion of arguments that I rejected in my ruling denying a preliminary injunction. In its Reply (docket no. 54), Bunge points out what it believes are the failings of Syngenta's few "new" arguments.

---

[2] If Bunge's dispositive motions are granted, this case will proceed only on Syngenta's claims in **Count V** (intentional interference with contractual relationships), **Count VI** (interference with prospective business advantage), **Count VII** (business defamation, libel *per se*, or slander *per se*), and **Count VIII** (violation of Minn. Stat. § 325D.44 and other states' codifications of the Uniform Deceptive Trade Practices Act).

### *1.     Applicable standards*

"As a general rule, a Rule 12(c) motion for judgment on the pleadings is reviewed under the same standard as a 12(b)(6) motion to dismiss." *Ginsburg v. InBev NV/SA*, 623 F.3d 1229, 1233 n.3 (8th Cir. 2010); *accord Gallagher v. City of Clayton*, ___ F.3d ___, ___, 2012 WL 5439278, *2 (Nov. 8, 2012). Thus,

> "To survive a motion to dismiss [or a motion for judgment on the pleadings], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While this court must "accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party," *United States v. Any & All Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir. 2000), "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

*Gallagher*, ___ F.3d at ___, 2012 WL 5439278 at *2. Furthermore, dismissal under Rule 12(b)(6)—and, hence, judgment pursuant to Rule 12(c)—is appropriate when a claim or action is fatally flawed in its legal premises. *See Stringer v. St. James R-1 Sch. Dist.*, 446 F.3d 799, 802 (8th Cir. 2006) (citing *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001)).

>    *2.     Application of the standards*
>
>        *a.     The USWA claim*

As to Syngenta's USWA claim in **Count II**, nothing in Syngenta's reiterated arguments convinces me that I was wrong in holding that the USWA does not create a private right of action in Syngenta's favor. *See Syngenta*, 820 F. Supp. 2d at 972-81. Syngenta's new argument on this issue is even more convoluted, relies on even more strained readings of amendments to the statutes at issue, lacks any support in case law or legislative history, involves insupportable inferential leaps concerning the purpose of amendments to the related regulations, and still runs afoul of the principle that regulations cannot create a private right of action that Congress did not create. *See, e.g., Freeman v. Fahey*, 374 F.3d 663, 665 n.2 (8th Cir. 2004). Thus, this claim is fatally flawed in its legal premise, and Bunge is entitled to judgment on the pleadings on the USWA claim in **Count II**. *Cf. Stringer*, 446 F.3d at 802.

>        *b.     The Iowa warehousing claims*

The comparable claim in **Count III** of violation of Iowa warehouse laws, both statutory and common law, is more problematic. In denying Syngenta's motion for a preliminary injunction, I concluded that there was no likelihood of success on the merits on this claim, because Bunge presented evidence that *all* of its warehouses are licensed under the USWA, and state law claims are preempted by the USWA. *Syngenta*, 820 F. Supp. 2d at 982. In its Motion For Judgment On The Pleadings, Bunge asserts that this claim fails as a matter of law, because I so held, and because Bunge's Licensing Agreement with the Farm Services Agency, USDA, Preliminary Injunction Ex. 2, notes that it applies to all licensed locations in the United States. Bunge asserts that I can consider the Licensing Agreement as part of the pleadings, because **Count IX** relies upon it. Syngenta counters that it cannot fairly be determined *on the pleadings* that all of Bunge's grain facilities are federally-licensed, where Bunge

5

relies on the Licensing Agreement, which does not show that any particular facility (let alone each of them) is federally-licensed.

As I noted in the ruling on Syngenta's motion for preliminary injunction, any findings that I made in that ruling were "provisional" and "not binding" in subsequent proceedings. *Syngenta*, 820 F. Supp. 2d at 957. Furthermore, as in *Ginsburg*, the parties have not addressed the effect of the judgment on the pleadings standard, which ordinarily looks at factual pleadings, not matters outside of the pleadings, when a Rule 12(c) motion is timely made after the denial of a plaintiff's motion for a preliminary injunction that generated a substantial record outside of the pleadings. 623 F.3d at 1233 n.3. Nothing in the *pleadings* establishes that Syngenta's allegation that some of Bunge's grain facilities in Iowa are not federally licensed and, hence, are subject to Iowa warehousing laws, is implausible. *Gallagher*, ___ F.3d at ___, 2012 WL 5439278 at *2. Although the question likely could have been settled on a motion for summary judgment, Bunge did not present it on that procedural footing, even though it did seek summary judgment on **Count I** at about the same time that it sought judgment on the pleadings on **Count III**. In its Reply in support of its Motion For Judgment On The Pleadings, Bunge argues, for the first time, that the Iowa statutory claim also fails because there is no private cause of action to enforce IOWA CODE § 203C.27. That argument cannot salvage Bunge's prayer for judgment on the pleadings on this claim, however, because I will not consider arguments raised for the first time in a reply brief. *See, e.g., Truckenmiller v. Burgess Health Ctr.*, 814 F. Supp. 2d 894, 907 n.3 (N.D. Iowa 2011) (citing *Armstrong v. American Pallet Leasing, Inc.*, 678 F. Supp. 2d 827, 872 n.19 (N.D. Iowa 2009), N.D. IA. L.R. 7.1(g), and practice in the Eighth Circuit). Thus, Bunge's motion for judgment on the pleadings on **Count III** is denied.

### c. *The declaratory judgment claim*

Similarly, it follows from my disposition of the USWA and Iowa warehousing claims that Bunge is entitled to judgment on the pleadings only as to the part of **Count IV** seeking declaratory judgment of a violation of the USWA. Bunge is not entitled to judgment on the pleadings as to the part of that claim seeking declaratory judgment of a violation of Iowa warehousing laws.

### d. *The third-party beneficiary contract claim*

The last claim on which Bunge seeks judgment on the pleadings is **Count IX**, which alleges breach of contract as a third-party beneficiary of Bunge's Licensing Agreement for Grain and Rice Warehouse Operators with the USDA Farm Service Agency (FSA). Despite Syngenta's renewed attempts to convince me otherwise, I reiterate that I find nothing in the Agreement that directly states or even indirectly hints at an intent to benefit or to allow enforcement by third-party entities such as Syngenta, that is, producers of seeds used by others to grow agricultural products that might ultimately be stored in a licensed warehouse. *See Syngenta*, 820 F. Supp. 2d at 983-94 (citing, *inter alia*, *Astra USA, Inc. v. Santa Clara County, Cal.*, ___ U.S. ___, ___, 131 S.Ct. 1342 (2011)). Syngenta's attempts to evade the authority and reasoning on which I relied are unavailing. Bunge is entitled to judgment on the pleadings on the claim in **Count IX**.

### 3. *Summary*

In summary, Bunge's Motion For Judgment On The Pleadings is granted in part and denied in part. It is granted as to **Count II**; denied as to **Count III**; granted as to the part of **Count IV** concerning declaratory judgment of a violation of the USWA, but denied as to the part of **Count IV** concerning declaratory judgment of a violation of Iowa warehousing laws; and granted as to **Count IX**.

### B. The Motion For Summary Judgment And The Motion To Supplement The Summary Judgment Record

In its second dispositive motion, Bunge seeks summary judgment on **Count I**, Syngenta's claim of false advertising and/or promotion in violation of the Lanham Act, 15 U.S.C. § 1125(a). Syngenta filed its Motion For Leave To Supplement Summary Judgment Record (docket no. 98) in relation to this dispositive motion. I will grant Syngenta's Motion For Leave To Supplement, notwithstanding Bunge's objections, but I find that the supplemental evidence that Syngenta offers ultimately has no impact on the disposition of Bunge's Motion For Summary Judgment.

#### *1. Applicable standards*

As I have explained, in greater or lesser detail, on numerous occasions, summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) ("Summary judgment is appropriate if viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law."); *see generally Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986); *see also Torgerson v. City of Rochester*, 643 F.3d 1031, 1042–43 (8th Cir. 2011) (*en banc*) (explaining how the facts are viewed and each party's burden on a motion for summary judgment). Summary judgment is particularly appropriate when only questions of law are involved. *See, e.g., Cremona v. R.S. Bacon Veneer Co.*, 433 F.3d 617, 620 (8th Cir. 2006).

### *2. Application of the standards*

In my ruling on Syngenta's motion for preliminary injunction, I found that Syngenta had no likelihood of success on its Lanham Act claim, because Syngenta was not in "commercial competition" with Bunge, and because the speech in question, in Bunge's sign stating its policy of refusing Viptera corn, was not "commercial speech." *Syngenta*, 820 F. Supp. 2d at 986-87. The parties now contest whether or not there are genuine issues of material fact on these and the other elements of Syngenta's Lanham Act claim, but I find that these two elements are, once again, dispositive.

#### *a. The "commercial competition" requirement*

Syngenta resurrects and embellishes its argument that the Eighth Circuit Court of Appeals does not require that the parties be in "commercial competition" for a § 1125(a) claim to lie, again relying on *American Association of Orthodontists v. Yellow Book USA, Inc.*, 434 F.3d 1100 (8th Cir. 2006), as leaving the question open—or, as Syngenta now argues, impliedly eliminating such a requirement. Again, this argument cannot stand for essentially the reasons that I previously stated:

> As Bunge asserts, the Eighth Circuit Court of Appeals apparently overlooked in *American Association of Orthodontists* its prior conclusion, in *Aviation Charter, Inc. v. Aviation Research Group/US*, 416 F.3d 864 (8th Cir. 2005), that "[f]or a statement to constitute commercial advertising or promotion, it must be made, *inter alia*, by a defendant who is in commercial competition with the plaintiff," and its holding in that prior case that the district court had correctly found that the plaintiff's Lanham Act action failed because the defendant was not in commercial competition with the plaintiff. *Aviation Charter*, 416 F.3d at 871.

*Syngenta*, 820 F. Supp. 2d at 986.  Syngenta cites no intervening *en banc* decision of the Eighth Circuit Court of Appeals or the Supreme Court that dispenses with the "commercial competition" requirement for its § 1125(a) claim.

Syngenta now argues, in the alternative, that if there is such a "commercial competition" requirement, there are genuine issues of material fact on that requirement here.  Syngenta points to evidence that Bunge provides economic incentives to growers to grow and deliver certain specialty crops, with seeds produced by companies other than Syngenta, and thereafter sells those crops to certain customers at a premium.  Syngenta asserts that every acre planted pursuant to such an incentive program is an acre not planted in Syngenta's Viptera corn.  "Quite simply," Syngenta argues, "Bunge is expressly in the business of promoting a competing seed product and incentivizing growers to plant a product that competes with Syngenta products."  Syngenta's Supplemental Resistance Brief (docket no. 90), 6.  In its Supplemental Reply (docket no. 95), 1-4, Bunge counters that the record shows that this incentive program involves only *soybeans*, at a Bunge grain facility *that does not accept any corn*; that, in fact, Bunge does not accept the soybeans subject to this incentive program at its other facilities, as stated in the same signs stating its policy that it will not accept Viptera corn; and that Syngenta does not sell seeds for any of the specialty soybeans, so that Syngenta is not involved in that specialty soybean market.  Bunge argues that there is no authority supporting Syngenta's attenuated concept of "commercial competition" under the Lanham Act and that recognizing such a concept would lead to the absurd result that every grain handling company competes with every seed developer simply by paying more money for delivery of one crop over another.

Although the case law from this circuit on the question is not extensive, it is clear that the Eighth Circuit Court of Appeals understands the "commercial competition" requirement of a § 1125(a) claim to involve a much less attenuated

competitive relationship between the parties than the one on which Syngenta relies. In *Aviation Charter, Inc.*, the Eighth Circuit Court of Appeals affirmed the district court's finding that defendant ARGUS was not in "commercial competition" with plaintiff Aviation Charter, 416 F.3d at 871, where "ARGUS publishe[d] and s[old] safety ratings of air charter service providers," and Aviation Charter operated an air charter service. *Id*. at 866. Similarly, although Syngenta cites *American Association of Orthodontists* as leaving open the question of whether or not "commercial competition" is a requirement of a § 1125(a) claim, the court in that case nevertheless concluded that "neither AAO nor its members were competitors of the alleged wrongdoer [Yellow Book]," 434 F.3d at 1104, where AAO was "a trade organization representing orthodontists," and Yellow Book "publishe[d] 'yellow pages' directories that list, by category, businesses and professionals that pay for the listings." *Id*. at 1101. The court concluded that the plaintiffs and the defendant were not "competitors," because "Yellow Book is a publisher, not a competing provider of orthodontic services." *Id*. at 1104. Thus, these cases counsel that the "categorical approach," requiring a § 1125(a) case to be between "commercial competitors," *id*. at 1103-04; *Aviation Charter, Inc.*, 416 F.3d at 871 (stating such a categorical requirement), requires that the plaintiff and the defendant be competitors as to the same or similar services, goods, or products in the same market. *See also TrafficSchool.com v. Edriver, Inc.*, 653 F.3d 820, 827 (9th Cir. 2011) ("Competitors 'vie for the same dollars from the same consumer group.'" (quoting *Kournikova v. General Media Commc'ns, Inc.*, 278 F. Supp. 2d 1111, 1117 (C.D. Cal. 2003)); *Famous Horse, Inc. v. 5th Ave. Photo, Inc.*, 624 F.3d 106, 112 (2d Cir. 2010) (noting that its decisions had been read as adopting the "categorical approach," and describing "commercial competition" as involving businesses offering the buyer "rival commodities"); *see also Zobmondo Entertainment, L.L.C. v. Falls Media, L.L.C.*, 602 F.3d 1108, 1120 (9th Cir. 2010) (noting that, in a trademark case

pursuant to the Lanham Act, the question is whether competition is "among providers of the same product or service").

The evidence on which Syngenta relies does not generate a genuine issue of material fact that it is in "commercial competition" with Bunge in any services, goods, or products. Specifically, it does not undermine my prior conclusion that "Syngenta and Bunge do not compete in either seed production or grain storage." *Syngenta*, 820 F. Supp. 2d at 986. The fact that Bunge may offer incentives to certain growers in a certain area to grow certain brands of *soybeans* does not show any competition with regard to *corn*, a different product or commodity, and certainly does not show any competition in *seed production*, even if the difference in commodities to be grown from the seeds could be overlooked. Syngenta's arguments that every acre planted pursuant to such an incentive program for soybeans is an acre not planted in Syngenta's Viptera corn misses what defines "commercial competition," that is, competition in *the same or similar* goods, products, or services.

Furthermore, redefining the arena of commercial competition as "promoting seed products," as Syngenta attempts to do, still leaves Syngenta and Bunge promoting non-competing products, seeds for Viptera corn by Syngenta, and seeds for soybeans with certain traits by Bunge. Moreover, even if Bunge were promoting a different company's seed products for corn with such an incentive program, Syngenta and Bunge would still be at opposite ends of the grain production process, *see Syngenta*, 820 F. Supp. 2d at 986, because Syngenta is attempting to promote the sale of certain seed products to growers (supply end), while Bunge is seeking to promote the growing of certain seed products by growers for Bunge to purchase (and resell to others) (demand end). Finally, recognizing Syngenta's "indirect" competition theory would lead to the absurd result that every grain handling company competes with every seed developer simply by paying more money for delivery of one crop (such as soybeans) over another

12

(such as corn), or even by paying more money for delivery of corn that meets certain requirements (such as having or lacking certain transgenic traits) over other corn that does not. Does a household consumer "compete" with Sony, a television manufacturer, if he or she is willing to pay more for a Mitsubishi television? Of course not.

Thus, as a matter of law, Syngenta has failed to generate a genuine issue of material fact on the "commercial competition" requirement of its § 1125(a) claim, and Bunge is entitled to summary judgment on Syngenta's § 1125(a) claim on that basis alone. FED. R. CIV. P. 56(c) (summary judgment is appropriate when there are no genuine issues of material fact); *Woods* 409 F.3d at 990 (same); *Cremona*, 433 F.3d at 620 (summary judgment is particularly appropriate when only questions of law are involved).

### b. The "commercial speech" requirement

I also conclude that Syngenta has failed to generate a genuine issue of material fact on the "commercial speech" requirement of its § 1125(a) claim. As I previously explained,

> The Eighth Circuit Court of Appeals has recognized that a "threshold requirement for Lanham Act liability" is "commercial speech." *Porous Media Corp. v. Pall Corp.*, 173 F.3d 1109, 1120 (8th Cir. 1999). "Three factors govern whether speech is commercial: (i) whether the communication is an advertisement, (ii) whether it refers to a specific product or service, and (iii) whether the speaker has an economic motivation for the speech." *Id*. To meet the first requirement, an "advertisement" is speech that "'proposed a commercial transaction.'" *Id*. (quoting *Cincinnati v. Discovery Network*, 507 U.S. 410, 423, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993)). In *Porous Media*, the Eighth Circuit Court of Appeals found that the speech in question met this requirement, because it urged readers to buy Pall's filter and not to buy Porous's. *Id*. at 1121.

*Syngenta*, 820 F. Supp. 2d at 986-97. In *Porous Media*, the Eighth Circuit Court of Appeals concluded that "[t]he presence of all three factors provides 'strong support' for the conclusion that the speech in question is commercial." 173 F.3d at 1120 (quoting *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 67 (1983)).

Syngenta argues that "commercial speech" does not require the presence of all three factors identified in *Porous Media* and, still more specifically, that it does not require an "advertisement" or a proposal of a commercial transaction. Syngenta argues that Bunge's sign stating its policy clearly satisfies the second and third factors, and that there is a genuine dispute as to the first factor, because the sign stating Bunge's policy attempts to dictate the terms of a commercial transaction. Syngenta points to evidence that it argues shows that Bunge attempted to incorporate the terms of its sign into farmers' contracts. Bunge does not dispute the presence of the second and third factors identified in *Porous Media*, but argues that the test of whether a statement is "commercial speech" *is* whether it proposes a commercial transaction. Bunge argues that a sign *declining* to enter into a transaction involving Viptera corn does not implicitly propose another transaction.

In *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410 (1993), the Supreme Court addressed the scope of "commercial speech." The Court noted that it had first "held that even speech that does no more than propose a commercial transaction is protected by the First Amendment." *City of Cincinnati*, 507 U.S. at 421 (citing *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 762 (1976)). As the Court then explained,

> In later opinions we have stated that speech proposing a commercial transaction is entitled to lesser protection than other constitutionally guaranteed expression. *See Ohralik v. Ohio State Bar Assn.*, 436 U.S. 447, 455-456, 98 S.Ct. 1912, 1918, 56 L.Ed.2d 444 (1978). We have also suggested that such lesser protection was appropriate for a

14

> somewhat larger category of commercial speech—"that is, expression related solely to the economic interests of the speaker and its audience." *Central Hudson Gas & Electric Corp. v. Public Service Comm'n of New York*, 447 U.S., at 561, 100 S.Ct., at 2348. *We did not, however, use that definition in either* Bolger v. Youngs Drug Products Corp*., 463 U.S. 60, 103 S.Ct. 2875, 77 L.Ed.2d 469 (1983), or in* Board of Trustees of State University of N.Y. v. Fox*, 492 U.S. 469, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989)*.
>
> In the *Bolger* case we held that a federal statute prohibiting the mailing of unsolicited advertisements for contraceptives could not be applied to the appellee's promotional materials. Most of the appellee's mailings consisted primarily of price and quantity information, and thus fell "within the core notion of commercial speech— 'speech which does "no more than propose a commercial transaction."'" *Bolger*, 463 U.S., at 66, 103 S.Ct., at 2880 (quoting *Virginia Pharmacy*, 425 U.S., at 762, 96 S.Ct., at 1825, in turn quoting *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376, 385, 93 S.Ct. 2553, 2558, 37 L.Ed.2d 669 (1973)). Relying in part on the appellee's economic motivation, the Court also answered the "closer question" about the proper label for informational pamphlets that were concededly advertisements referring to a specific product, and concluded that they also were "commercial speech." 463 U.S., at 66-67, 103 S.Ct., at 2880. *It is noteworthy that in reaching that conclusion we did not simply apply the broader definition of commercial speech advanced in* Central Hudson—*a definition that obviously would have encompassed the mailings—but rather "examined [them] carefully to ensure that speech deserving of greater constitutional protection is not inadvertently suppressed."* 463 U.S., at 66, 103 S.Ct., at 2880. *In* Fox*, we described the category even more narrowly, by characterizing the proposal of a commercial transaction as* "the test *for identifying commercial speech."* 492 U.S., at 473-474, 109 S.Ct., at 3031 (emphasis added).

*City of Cincinnati*, 507 U.S. at 422-23 (emphasis added; footnotes omitted).

Thus, *City of Cincinnati* undermines Syngenta's argument that "commercial speech" does not necessarily have to "propose a commercial transaction."  Indeed, Supreme Court decisions regarding "commercial speech" "have 'recognized the "commonsense" distinction between speech proposing a commercial transaction, which occurs in an area traditionally subject to government regulation, and other varieties of speech.'" *Bolger*, 463 U.S. at 64 (quoting *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 455-56 (1978)).  Syngenta also draws the wrong inference from statements in *Porous Media* and *Bolger* that the presence of all three factors is "strong evidence" or "support" for the conclusion that the speech is "commercial," and from the statement in a footnote in *Bolger* that the Court did not "mean to suggest that each of the characteristics present in this case must necessarily be present in order for speech to be commercial," 463 U.S. at 67 n.14, which Syngenta argues suggest that the "proposal of a commercial transaction" factor is not required.  Plainly, if one of the factors is entirely missing, the suggestion that the speech is "commercial" is necessarily weakened.  Furthermore, in the footnote in *Bolger*, the Court continued, "For example, we express no opinion as to whether reference to any particular product or service is a necessary element of commercial speech," citing a Senate committee report concerning "corporate image" advertising.  *Id.* (citing U.S. Senate, Comm. on the Judiciary, 95th Cong., 2d Sess., Sourcebook on Corporation Image and Corporate Advocacy Advertising 1149-1337 (1978), which was a FTC Memorandum concerning corporate image advertising).  Thus, while speech might still be "commercial" notwithstanding the lack of a reference to a particular product or service, *id.*, nothing in *Bolger* suggests that speech can be "commercial" if it does not propose a commercial transaction, thus distinguishing it from other varieties of speech.  *Id.* at 64.

Syngenta argues that, even if it is required to prove that Bunge's sign "proposed a commercial transaction," it has generated genuine issues of material fact that the sign

16

did, indeed, do so. Syngenta argues that, through its sign, Bunge is trying to dictate the terms of the proposed transaction for the purchase of corn—that is, that it will not take Viptera corn. Syngenta argues that Bunge representatives have admitted that it believed that farmers would obey the sign, because following the sign was a term of the farmers' contracts with Bunge or a term of acceptance of corn delivered without a prior contract, and also argues that growers were required to deliver non-Viptera corn, even after they had planted Viptera corn. Bunge argues that it makes no sense to conclude that a sign declining to accept certain corn is a proposal of a commercial transaction. Bunge argues that accepting Syngenta's argument would make any communication by a for-profit entity commercial speech. Bunge argues that I correctly held, when denying Syngenta's motion for a preliminary injunction, that the sign *relates to*, but does not *propose* a transaction; indeed, it is a statement that Bunge *will not* enter into a transaction involving Viptera corn. At most, Bunge argues that the sign reiterated the preexisting terms of farmers' contracts, which prohibited delivery of corn with transgenic traits not approved for all export markets.

In concluding that Syngenta had no likelihood of success on its Lanham Act claim, I did conclude that, "[w]hile Bunge's sign stating its Policy certainly *relates* to commercial transactions, it does not *propose* any transaction with Bunge (or any rejection of any transaction with Syngenta); rather, it is a statement that Bunge *will not* enter into transactions for delivery of Viptera corn." *Syngenta*, 820 F. Supp. 2d at 987 (emphasis in the original). Syngenta has not convinced me that there are genuine issues of material fact that suggest a contrary conclusion. Under Bunge's grower contracts, growers were prohibited from delivering, and Bunge had the right to refuse, corn containing transgenic traits that were not approved for all United States export markets. *See* Syngenta's Supplemental Appendix at 424 (deposition testimony of Laura Bolte); *id*. at 436 (deposition testimony of Laura Bolte); *id*. 332 (deposition testimony of

17

Norman Kendrick); *see also* Defendant's Preliminary Injunction Exhibit A, Bunge Purchase Contract, General Terms and Conditions, ¶ 2 ("Seller shall not deliver, and Buyer has the right to reject delivery of, Goods containing transgenic genes/traits that are not approved for sale in Japan, Mexico, The European Union *and other U.S. export markets*." (emphasis added)), *quoted in Syngenta*, 820 F. Supp. 2d at 964. Also, as Bunge points out, at the time that it posted the sign stating its policy on July 5, 2011, growers subject to contract had already planted their crops and would have been under contract with Bunge for the upcoming harvest not to deliver corn with unapproved transgenic traits, so that the sign did not change the terms of their contract or propose a transaction on different terms.

In other words, Syngenta mischaracterizes the undisputed facts: The sign was not a proposal of a term of a contract (or a proposal of a transaction on certain terms), nor was compliance with the policy stated in the sign *made* a term of any contract, the sign simply *reiterated* a term of an existing contract. As to farmers delivering corn without a prior contract, the sign was not a proposal of a commercial transaction, but notice that Bunge would *not* enter into a transaction involving delivery of Viptera corn. I conclude that, as a matter of law, a statement of refusal to enter into a certain transaction, standing alone, is not a *proposal* of any transaction, and, hence, is not "commercial speech." *See City of Cincinnati*, 507 U.S. at 422-23; *Bolger*, 463 U.S. at 64. The conclusion might be different, however, if the statement promoted or urged selection of another product over the product that Bunge refused to take. *See, e.g., Proctor & Gamble Co. v. Haugen*, 222 F.3d 1262, 1275 (10th Cir. 2000) ("[W]e reject appellees' assertion that the subject message does not promote 'commercial transactions.' On the contrary, the message unambiguously urges recipients to eschew purchasing P & G products in favor of Amway products. While economic motivation or reference to a specific brand name and products, when viewed in isolation, might not

18

render a message commercial speech, we conclude that those factors taken together with the instant message's promotion of Amway products at the expense of P & G products support the characterization of the subject message as commercial speech." (citing, *inter alia*, *Bolger*, 463 U.S. at 67).

### *3. Summary*

Bunge's Motion For Summary Judgment on Syngenta's Lanham Act claim pursuant to § 1125(a) is granted. "Commercial competition" and "proposal of a commercial transaction" are required elements of such a claim as a matter of law, and Syngenta has failed to generate genuine issues of material fact on those elements. FED. R. CIV. P. 56(c) (summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law); *Woods* 409 F.3d at 990 (same); *Cremona*, 433 F.3d at 620 (summary judgment is particularly appropriate when only questions of law are involved).

### III. CONCLUSION

Upon the foregoing,

1. Bunge's October 14, 2011, Motion For Judgment On The Pleadings (docket no. 48) is **granted in part and denied in part**, as follows:

    a.    The motion is **granted** as to **Count II**;

    b.    The motion is **denied** as to **Count III**;

    c.    The motion is **granted** as to the part of **Count IV** concerning declaratory judgment of a violation of the USWA, but **denied** as to the part of **Count IV** concerning declaratory judgment of a violation of Iowa warehousing laws; and

    d.    The motion is **granted** as to **Count IX**.

2. Syngenta's September 25, 2012, Motion For Leave To Supplement Summary Judgment Record (docket no. 98) is **granted**.

3. Bunge's November 21, 2011, Motion For Summary Judgment (docket no. 56) is **granted**.

This matter will proceed on **Count III**, the part of **Count IV** pertaining to declaratory judgment on Iowa warehousing claims, and **Counts V** through **VIII**.

**IT IS SO ORDERED**.

**DATED** this 21st day of November, 2012.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA